IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS


**BARRY MORRIS**,

**Plaintiff,**

**v.**                                                            No. 17-0456-DRH

**JOHN BALDWIN, et al.,**

**Defendants.**

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### Introduction and Background

Pending before the Court is Morris's motion for temporary restraining order/injunction (Doc. 1). Specifically, Morris seeks to enjoin Menard Correctional Facility from using box and chains restraints on him and instead use medical restraints and/or waist chains restraints for which he has a medical permit

on plaintiff's state court writ on May 12, 2017.[1] After notifying the defendants of plaintiff's motion, the Court held an evidentiary hearing and took the matter under advisement on May 10, 2017. Based on the following, the Court **GRANTS in part** the motion for temporary restraining order/injunction.

On May 2, 2017, Morris, an inmate house at the Menard Correctional Center, filed suit against John Baldwin, Jacqueline Lashbrook, Frank Lawrence, H. Hawkins, Gail Walls, Bobby Hughes and Cindy Meyer for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 (Doc. 5).[2] Morris claims that defendants have been deliberately indifferent to his serious medical issues and subjected him to cruel and unusual punishment in violation of the Eighth Amendment. On May 5, 2017, the Court conducted its preliminary review of Morris' complaint pursuant to 28 U.S.C. § 191A and designated Morris' complaint into a single count – "Defendants showed deliberate indifference to Plaintiff's serious need for medical restraints and/or waist chain, subjecting him to cruel and unusual punishment in violation of the Eighth Amendment (Doc. 7). The Court summarized the facts as alleged by Morris as follows:

"Before Plaintiff's' incarceration, he had surgery on his right arm.

---

[1] According to the Seventh Circuit, "[t]he 'black box' is a hard plastic box placed over the lock apparatus that runs between the prisoner's handcuffs. The box does not cover the hands, but is situated between them. A chain runs through the box and encircles the prisoner's waist. The chain is tightened and then locked in back so that the prisoner's hand, restrained by handcuffs and the black box, are pulled against his stomach." *Knox v. McGinnis*, 998 F.2d 1405, 1407 (7th Cir. 1993)).

[2] Morris' complaint and motion for temporary restraining order/injunction are the same document (Docs. 1 & 5).

(Doc. 5, p. 2). Plaintiff went to physical therapy for a year to regain motion in his arm, but it is still partially paralyzed and sensitive to the touch. (Doc 1, p. 3). Plaintiff was incarcerated as early as 2006, but he did not experience box and chain restraints until 2012. *Id*. Because of the great deal of pain the box and chain restraints caused Plaintiff, he sought a medical permit from the Stateville medical director that would exempt him from the box and chain restraints in favor of medical restraints and/or waist chains. *Id*. Stateville's medical director granted the permit without issue, and a new medical restraints permit has been issued to Plaintiff every year since. *Id*.

Plaintiff was transferred to Menard from Stateville on August 31, 2016. (Doc. 5, p. 2). On October 31, 2016, Plaintiff showed Dr. Siddiqui his previous medical permits from Stateville, and explained his medical condition and history to him. *Id*. Dr. Siddiqui issued Plaintiff a comparable medical restraints permit for Menard on October 31. (Doc. 5, p. 3). On February 27, 2017, Plaintiff went out on his first medical writ, and his waist chains and/or medical restraints permit was not honored, allegedly because the medical permit was not issued by the medical director, Dr. Trost. *Id*. Plaintiff was subjected to the box and chain setup, and was in pain because of it for approximately three hours. *Id*.

Plaintiff saw Dr. Trost on March 13, 2017, and was issued a medical permit allowing Plaintiff waist chains and/or medical restraints among other medical accommodations. *Id*. On March 23, 2017, Plaintiff had another medical writ, so he showed the permit from Dr. Trost to the writ officers in order to avoid placement in the box and chain setup. (Doc. 5, p. 4). The writ officers told Plaintiff that the administration would not honor his permit. *Id*. Plaintiff was scheduled for an MRI, so he went on the medical writ without the benefit of waist chains and/or medical restraints, and he suffered in pain for another three or more hours. *Id*.

The next day, Plaintiff had another medical writ but refused to go unless he was placed in the proper, approved restraints. *Id*. Plaintiff was told by a corrections officer that the waist chains and medical restraints would not be allowed, but that the officer, a major, would make sure Plaintiff could put his hands any way he wanted and the handcuffs would not be as tight as before. *Id*. Plaintiff agreed to these terms, but blood flow was still interrupted and his hand and arm became numb, his middle finger curled up, and he endured pain and suffering for another three or more hours. *Id*.

Plaintiff filed an emergency grievance on March 29, 2017 to Defendant Warden Lashbrook regarding the situation. *Id*. On April 5, 2017, Plaintiff sent a letter to Defendant ADA Warden Lawrence

concerning the issue. (Doc. 5, p. 5). Plaintiff also wrote to several other individuals during this timeframe in an attempt to resolve the issue, including Defendant John Baldwin on April 12, 2017. *Id*. Plaintiff requested a status update from Lashbrook on April 13, 2017 because he feared his upcoming court writ to Joliet, Illinois in the box and chain would further damage his right arm and hand and would cause ongoing pain throughout the writ. *Id*. Because Lashbrook would not answer his grievance, Plaintiff sent a cover sheet with his March 29, 2017 emergency grievance to Defendant Meyer on April 19, 2017, concerning his need for waist chains and/or medical restraints during his upcoming court writ to Joliet. *Id*. Meyer has not answered the grievance. *Id*.

On April 25, 2017, Plaintiff sent a letter to Defendant Hawkins, explaining his situation and the risk of serious damage to his arm if he is forced to go to Joliet in the box and chain setup. *Id*. Plaintiff sent a similar letter to Defendants Hughes and Walls on April 27, 2017, explaining that irreparable harm will befall his right arm and hand if his medical permit is not honored. (Doc. 5, pp. 5-6). On April 27, 2017, Plaintiff also filed another grievance with Meyer in response to his being taken out on another medical writ that day and being forced to use the box and chain setup. (Doc. 5, p. 6). Because his medical permit was not honored, Plaintiff's finger curled into a ball, and the pain was so intense it brought him to tears. *Id*. Plaintiff made a verbal complaint to the nurse and the mental health staff, and is scheduled to see mental health and the medical doctor. *Id*.

Plaintiff is scheduled for a court writ in Joliet, Illinois on May 12, 2017. (Doc. 5, p. 7). He has alleged that there is a strong possibility that he will have to leave from Menard for more medical and court writs in the near future and that if he does not get the proper restraints, he will be subjected to ongoing pain and suffering due to the box and chain setup. *Id*. Plaintiff seeks a temporary restraining order and preliminary injunction that would direct the defendants and the Illinois Department of Corrections to use medical restraints and/or a waist chain on Plaintiff when he has a court or medical writ and to follow the medical protocols recommended by Dr. Trost and the other doctors at Menard. (Doc. 5, p. 8). Plaintiff also seeks monetary damages from the defendants. *Id*.

(Doc. 7, ps. 2-6) (footnote omitted). Thereafter, the Court set this matter for an evidentiary hearing (Doc. 9).

On May 10, 2017, the Court held the evidentiary hearing. Morris, Dr. Siddiqui, ADA Hawkins and Warden Lashbrook all testified. Based on the record, the oral argument and the applicable law, the Court rules as follows.

### **Injunction Standard**

In order to obtain a temporary restraining order or a preliminary injunction under Rule 65, Morris must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists, and; (3) Morris will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). If those three factors are shown, the district court must then balance the harm to each party and to the public interest from granting or denying the injunction. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). The United States Supreme Court has emphasized that a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 870 (7th Cir. 2006) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original)).

Here, the Court finds that Morris has met all three elements entitling him to a preliminary injunction. First, the Court finds that Morris' underlying case has some likelihood of success on the merit based on the allegations in the complaint

and the testimony given during the hearing.[3] The issue presented here is not the need for a type of restraint which is inherently discomforting, but the unnecessary use of a painful means of a restraint when an alternative is available and specifically prescribed by a physician. Morris' pain and suffering stemming from his arm injury satisfies the objective component of deliberate indifference to serious medical needs of prisoners. Also, Morris satisfies the subjective component in that there is evidence in the record (exhibits attached to the complaint and Morris' testimony that he sent various letters to defendants) that defendants were aware of Morris' situation and ignored or failed to adequately address his medical needs for medical restraints and/or waist chain. *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015)("An inmate's correspondence to a prison administrator may … establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation.")(citation omitted). Also, at the stage of the proceedings, Morris' claim satisfies the *Whitley* test. *See DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000)(In Eighth Amended excessive force cases, "'the core judicial inquiry' is whether force was applied in a good-faith effort to maintain or restore discipline or maliciously or sadistically to cause harm.") (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)); *Whitley v. Albers*, 475

---

[3] The elements for a deliberate indifference to serious medical needs claim are: (1) the prisoner suffered from an objectively serious medical need; and (2) the state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

U.S. 312 (1986).[4]

Second, Morris has clearly demonstrated that no adequate remedy at law exists. Typically a legal remedy is inadequate for one of four reasons: (1) damages would come too late to be of meaningful value to the plaintiff; (2) plaintiff might not be able to afford the full litigation; (3) the defendant might not be collectible at the end of the litigation; or (4) the monetary damages might be too difficult to calculate. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir.1984). Here, the damage to Morris' right arm through the continued use of the box and chain restraints may result in severe, if not total, deterioration of the arm, which would require extensive rehabilitation to restore if it ever could. Moreover, use of the box and chains would result in extreme pain and suffering.

Third, Morris has clearly shown that without an injunction he will suffer irreparable injury in his right arm. Morris testified that the box and chains restraints cause him unbearable pain and suffering as that type of cuff rises up his arm and cuts of the blood flow. Morris also testified that since the use of the box and chains restraints on him while housed in Menard his middle index finger is now crooked when before and after physical therapy it was straight.

Lastly, after balancing the harm to Morris and defendants and to the public interests, the Court finds that an injunction is proper. While defendants testified and showed that the box and chains restraints are generally the preferred method

---

[4] Two different Eighth Amendment standards potentially apply here: (1) the *Whitley* standard, and (2) the "deliberate indifference" standard of *Farmer*.

for cuffing prisoners as they are the most safe and secure way to transport prisoners (the way the hands are placed when cuffed around the box make it impossible for inmates to pick the key locks of the cuffs), Morris, likewise, demonstrated that the waist chain restraints as they *pertain* to him are as effective as the box and chains restraints and do not cause him harm. The Menard correctional officers who transported Morris provided the Court with a demonstration of the waist chain restraints on Morris. With the waist chain restraints on, Morris, who was in a wheelchair, could only move his hands about six inches from his waist. Furthermore, Menard correctional officials safely transported Morris to the Court for this hearing utilizing the waist chain restraints.[5] Here it seems that that there is/was an unnecessary use of a painful means of a restraint when an alternative means is available and specifically prescribed by a prison physician. Thus, the balancing of harm between the parties and to the public interests weigh in favor towards Morris. Thus, the Court finds that an injunction based on the circumstances of this case is warranted.

Lastly, the Court notes that it must address the question it posed to the parties before the evidentiary hearing adjourned: whether this motion is moot as there is no longer an ongoing injury to Morris as he currently is on the medical permit list and he was transported to the Court with waist chain restraints. According to Warden Lashbrook, Morris is currently on the May 8, 2017 medical

---

[5] Warden Lashbrook testified that after she read the complaint in this case, she checked into Morris' allegations/situation and made sure that the medical permit allowing medical restraints and/or waist chain restraints was honored.

permit list for waist chain restraints and will remain on the list until his medical permit expires on March 18, 2018 (she looked into the situation) and that she made sure that her officers/employees are aware of Morris' situation. However, the Court notes that the evidence reflects that Morris *should have been* and very well *might have been* on the medical permit list when the staff at Menard did not honor his medical restraint permit and utilized the box and chains restraints for his medical writs. The evidence as to this issue is vague and Warden Lashbrook was not certain. Thus, the Court is left to speculate as to *when* Morris was officially placed on the medical permit list and when/how an inmate is placed on and taken off of the medical permit list. Further, Morris remains under the complete control of those who decide which restraints to utilize. Morris' situation is "capable of repetition, yet evading review," and therefore based on the record, the Court finds that motion is not moot. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183 (1982).

## Conclusion

Accordingly, the Court **GRANTS in part** Morris' motion for temporary restraining order/injunction (Doc. 5). The Court effectively immediately **ENJOINS** Menard Correctional Center, its officers, employees, agents, servants and employees from utilizing box and chain restraints on Morris. This Injunction shall remain in place until further order of this Court. The defendants may move,

for example, to dissolve this order if the medical permit has been removed or if it has been determined that Mr. Morris presents a risk to the safety and security of those around him during times that restraints would be called for.

**IT IS SO ORDERED.**

Signed this 11th day of May, 2017.

Digitally signed by Judge David R. Herndon
Date: 2017.05.11 14:53:11 -05'00'

**United States District Judge**